IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THE GOLD REFINERY, LLC, a Michigan Limited Liability Company,<br><br>              Plaintiff,<br><br>      vs.<br><br>ALOHA ISLAND GOLD, LLC, a Hawaiian Limited Liability Company, SAM TIMAS, an individual; SANDY WARD, an individual; TAMMIE AKAU, an individual; KRISTY ARAUJO-NAGAO, an individual; LANA ATON, an individual; MARY KAY CARVALHO, an individual; SUNNY COLLO, an individual; PRISCILLA GRAY, an individual; CHISTOPHER HENRIQUES, an individual; RAINA SANTOS, an individual; GARY SCHLEIF, an individual; KAREN SCHLEIF, an individual; DENISE CABEL, an individual; OSWALDO CABEL, an individual; TIERRA HULIHEE, an individual; HOLLY KEANAAINA, an individual; CASSANDRA RYUSAKI, an individual; TAMMY MATTOS, an individual; JASON ATON, an individual; BRANDI PAGALA, an individual,<br><br>              Defendants.<br>_____ | CIVIL NO. 11-00522 SOM-RLP<br><br>ORDER (1) GRANTING PLAINTIFF'S MOTION TO PARTIALLY DISMISS DEFENDANTS SAM TIMAS AND SANDY WARD'S COUNTERCLAIM TO PLAINTIFF'S COMPLAINT, and (2) GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT ALOHA ISLAND GOLD, LLC'S COUNTERCLAIM |

ORDER (1) GRANTING PLAINTIFF'S MOTION TO PARTIALLY
DISMISS DEFENDANTS SAM TIMAS AND SANDY WARD'S COUNTERCLAIM TO
PLAINTIFF'S COMPLAINT, AND (2) GRANTING PLAINTIFF'S
MOTION TO DISMISS DEFENDANT ALOHA ISLAND GOLD, LLC'S COUNTERCLAIM

I.       INTRODUCTION.

Plaintiff The Gold Refinery, LLC ("TGR"), buys and resells gold, usually in the form of personal jewelry.  TGR is suing Independent Agents ("IAs"), individuals that, in return for commissions, solicited customers to sell gold to TGR.  Compl. ¶¶ 2, 4, Aug 25, 2011, ECF No. 1.  TGR claims that, while serving as TGR's IAs, Defendants Sam Timas and Sandy Ward formed Aloha Island Gold ("Aloha Island"), a company that competed directly with TGR.  Id. ¶¶ 22-23.  TGR sues Aloha Island as well as Timas, Ward, and eighteen other former or current IAs, claiming that Defendants have stolen TGR's proprietary business methods, customer lists, and distributors.  Id. ¶ 1.  Timas and Ward have counterclaimed, and Aloha Island has filed a separate counterclaim.

Two motions brought by TGR are now before the court. The first seeks dismissal of nine claims in the Timas and Ward counterclaim, and the second seeks dismissal of the Aloha Island counterclaim.  The court grants both motions.

II.      FACTUAL BACKGROUND.

Both TGR and Aloha Island buy and resell gold.  They use "multi-level" or "network" marketing.  Compl. ¶ 11; Sam Timas and Sandy Ward's Counterclaim Against The Gold Refinery, LLC For

2

Violation of Hawai`i Franchise Investment Law, Unfair Competition, Breach of Contract, Tortious Breach of Contract, Defamation, Negligent Misrepresentation, Breach of Implied Covenant of Good Faith, Illegal Restraint of Trade, and Punitive Damages ("Timas and Ward Counterclaim") ¶ 9, Sept. 9, 2011, ECF No. 17-1; Defendant Aloha Island Gold, LLC's Counterclaim ("Aloha Island Counterclaim") ¶ 8, Oct, 20, 2011, ECF No. 4.  Multi-level marketing usually involves independent contractors who earn commissions through sales on behalf of a company.  Those independent contractors may also recruit other independent contractors and earn commissions based on sales by those recruits.  TGR refers to its IAs' recruits as "junior IAs." Timas and Ward Counterclaim ¶ 11.  Amway and Avon are well-known examples of multi-level marketing companies.  See Compl. ¶¶ 1-4.

TGR enlists IAs to arrange home-based gold-selling parties or events.  Id. ¶ 2.  Potential customers are invited to a party or event at which an IA purchases gold, usually personal jewelry, from the attendees, using money advanced by TGR.  Id.; Timas and Ward Counterclaim ¶ 9.  The IAs then turn the gold over to TGR.  Timas and Ward Counterclaim ¶ 9.  According to TGR, Aloha Island also hosts gold-selling parties and competes directly with TGR.  Compl. ¶ 22.

One becomes a TGR IA by signing up online.  Timas and Ward Counterclaim ¶ 10.  The potential IA "agrees" to TGR's

3

"Terms and Conditions" by clicking an "I agree" box on TGR's website.  Id.

On September 15, 2010, Timas and Ward allegedly agreed to be IAs for TGR.  Id. ¶ 12.  They allege that, from the beginning of their relationship with TGR, TGR "engaged in conduct that was designed to, and ultimately did, sabotage" their business and their relationships with their junior IAs.  Id. ¶ 14.  For example, TRG allegedly "constantly berated" Timas and Ward and failed to advance them enough funds to host their parties.  Id. ¶ 14.  TGR also allegedly failed to assist Timas and Ward in training their junior IAs.  Id. ¶ 15.

Timas and Ward terminated their relationships with TGR about two months after having signed up.  Id. ¶ 19.  In November or December 2010, a number of other TGR IAs also terminated their relationships with TGR (collectively, the "former IAs").  Aloha Island Counterclaim ¶ 10.  Some of them entered into independent contractor agreements with Aloha Island.  Id.; Timas and Ward Counterclaim ¶ 19.  According to TGR, on December 16, 2010, Timas and Ward formed Aloha Island.  Compl. ¶ 22.

Aloha Island alleges that, when TGR discovered its former IAs' agreements with Aloha Island, TGR sent the former IAs cease and desist letters threatening legal action if they continued to work with Aloha Island.  Aloha Island Counterclaim ¶ 11.  In their separate counterclaim, Timas and Ward describe

4

the same cease and desist letters but do not mention Aloha Gold at all.  Timas and Ward allege that TGR sent their junior IAs cease and desist letters threatening legal action if they worked with Timas and Ward to host gold-selling parties.  Timas and Ward Counterclaim ¶ 19.  Timas and Ward contend that, as a result, their junior IAs "quit the gold party business permanently," causing Timas and Ward to lose several weeks of profits and many party representatives.  Id.  For its part, Aloha Gold makes nearly identical allegations, except that the agreement and relations it says many of the former IAs allegedly terminated or abandoned were with Aloha Island.  Id. ¶ 13.

On August 25, 2011, TGR filed suit against Defendants, alleging, inter alia, that Defendants misappropriated TGR's trade secrets, tortiously interfered with TGR's contracts and TGR's prospective business advantage, were unjustly enriched, competed unfairly, and violated the Hawaii Uniform Deceptive Trade Practice Act.  Compl. ¶¶ 45-123.  On September 25, 2011, Timas and Ward counterclaimed against TGR, asserting ten counts, including, inter alia, breach of contract, defamation, and violations of the Hawaii Franchise Act and the Hawaii Antitrust Act.  TGR seeks dismissal of nine of those counts, moving under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim and under Rule 9(b) of the Federal Rules of Civil Procedure for failure to plead fraud with particularity.

5

On October 20, 2011, Aloha Island counterclaimed against TGR for tortious interference with contractual relations, and for tortious interference with prospective business advantage.  TGR seeks dismissal of those counts on the ground that Aloha Island fails to state a claim.

III.    <u>LEGAL STANDARDS.</u>

A.    <u>Rule 12(b)(6).</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides:  "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defense[] by motion: . . . (6) failure to state a claim upon which relief can be granted[.]"

Dismissal under Rule 12(b)(6) may be based on either (1) the lack of a cognizable legal theory, or (2) insufficient facts to support a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).

On a Rule 12(b)(6) motion to dismiss, the court takes all allegations of material fact as true and construes them in the light most favorable to the nonmoving party. Marcus v. Holder, 574 F.3d 1182, 1184 (9th Cir. 2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 554). Whether a complaint states a plausible claim for relief is "context-specific," and such a determination "requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

When reviewing motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997);

Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However,

courts may "consider certain materials--documents attached to the

complaint, documents incorporated by reference in the complaint,

or matters of judicial notice--without converting the motion to

dismiss into a motion for summary judgment."  United States v.

Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  Documents with

contents that are alleged in a complaint may also be considered

in ruling on a Rule 12(b)(6) motion to dismiss, if no party

questions its authenticity.  See Branch v. Tunnell, 14 F.3d 449,

453-54 (9th Cir. 1994), overruled on other grounds by Galbraith

v. Cnty of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002).

 B. Rule 9(b).

  Usually, a party's pleading need only contain "a short

and plain statement of the claim showing that the pleader is

entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, Rule

9(b) requires that, when fraud or mistake is alleged, "a party

must state with particularity the circumstances constituting

fraud or mistake.  Malice, intent, knowledge, and other

conditions of a person's mind may be alleged generally."  Fed. R.

Civ. P. 9(b).

  An allegation of fraud is sufficient if it "identifies

the circumstances constituting fraud so that the defendant can

prepare an adequate answer from the allegations."  Neubronner v.

Milken, 6 F.3d 666, 672 (9th Cir. 1993) (internal citations and

quotations omitted).  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Kearns, 567 F.3d at 1124 (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)) (internal quotation marks omitted).  To sufficiently identify the circumstances that constitute fraud, a plaintiff must identify such facts as the times, dates, places, or other details of the alleged fraudulent activity.  Neubronner, 6 F.3d at 672.  A plaintiff must also explain why the alleged conduct or statements are fraudulent.  In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548 n.7 (9th Cir. 1994) (en banc), superseded by statute on other grounds by 15 U.S.C. § 78u-4.

When a court exercises diversity jurisdiction, state substantive law determines the elements of the claims, but federal procedural requirements apply.  "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule."  Kearns, 567 F.3d at 1125 (internal citations and quotations omitted).

A court treats a motion to dismiss under Rule 9(b) like a motion to dismiss under Rule 12(b)(6).  Vess, 317 F.3d at 1107.

IV.     ANALYSIS.

        A.   Timas and Ward's Counterclaim.

        Timas and Ward assert ten claims: Count 1: "Violation of Hawai`i Franchise Investment Law, H.R.S. § 482E-6(1) (Bad Faith)"; Count 2: "Violation of Hawai`i Franchise Investment Law, H.R.S. § 482E-2 (Failure to Provide or File Offering Circular)"; Count 3: "Violation of Hawai`i Franchise Investment Law, H.R.S. § 482E-9(a), H.R.S. § 482E-6(2), and H.R.S. ch. 480 (Unfair Competition)"; Count 4: "Breach of Contract"; Count 5: "Tortious Breach of Contract"; Count 6: "Defamation"; Count 7: "Negligent Representation"; Count 8: "Breach of Implied Covenant of Good Faith and Fair Dealing"; Count 9: "Counterdefendant's Covenants Not to Compete are Unenforceable and Constitute an Illegal Restraint of Trade under the Hawai`i Antitrust Act"; and Count 10: "Punitive Damages."  TGR seeks dismissal of all counts except Count 6.[1]

        1.   Counts 1, 2 and 3.

        Counts 1, 2, and 3 assert claims under Hawaii's Franchise Investment Law, chapter 482E of the Hawaii Revised Statutes.  TGR argues that Counts 1, 2, and 3 fail to state

---

        [1]  While TGR's motion states that it seeks dismissal of Count 6, TGR presents no arguments regarding that claim.  TGR's reply clarifies that Count 6 is not in issue on TGR's present motion.

claims because, under Hawaii law, TGR is not a franchisor and did not have a franchisor/franchisee relationship with Timas and Ward.  <u>See</u> Haw. Rev. Stat. § 482E-2 (defining a "franchise").

Timas and Ward allege that TGR is a franchisor under section 482E-2 and that "the Agreement" granted Timas and Ward franchise rights.  Timas and Ward Counterclaim ¶ 22.  It is unclear what agreement the counterclaim refers to.  Paragraph 10 describes the Terms and Conditions that TGR's IAs assented to online, while paragraph 12 alleges that, on September 15, 2010, Timas and Ward agreed to be IAs for TGR pursuant to different provisions in "the Agreement."

Assuming "the Agreement" and the Terms and Conditions are different contracts, Timas and Ward do not plead sufficient facts to base claims on the Agreement.  The first element of a franchise is the existence of an agreement.  <u>See</u> Haw. Rev. Stat. § 482E-2 (defining a "franchise" as an "oral or written contract or agreement, either expressed or implied").  But aside from alleging that the Agreement was a franchise agreement, Timas and Ward provide insufficient relevant identifying information.  It is unclear whether the Agreement was oral, written, or implied, or what rights and obligations each party had under the Agreement.  A pleading need not exhaustively describe a contract, but it must describe it at least enough so its essential terms are discernable.

11

In their counterclaim, Timas and Ward merely recite formulaically the elements of a franchise.  This is insufficient to state a claim.  See Iqbal, 129 S. Ct. at 1949.

Timas and Ward allege that, under "the Agreement," TGR "granted [Timas and Ward] a license to use TGR's trade name, service mark, trademark, logotype or related characteristic in which there is a community interest in the business of the offering, selling, or distributing goods or services."  Timas and Ward Counterclaim ¶ 12.  They further allege that they "were required to pay directly or indirectly, a franchise fee, namely a monthly fee for access to TGR's 'back room' information without which they could not do business as an IA."  Id.

These allegations are taken nearly verbatim from section 482E-2 of the Hawaii Revised Statutes.  Section 482E-2 defines a franchise as an:

> oral or written contract or agreement, either
> expressed or implied, in which a person
> grants to another person, a license to use a
> trade name, service mark, trademark, logotype
> or related characteristic in which there is a
> community interest in the business of
> offering, selling, or distributing goods or
> services at wholesale or retail, leasing, or
> otherwise, and in which the franchisee is
> required to pay, directly or indirectly, a
> franchise fee.

What is missing from Timas and Ward's allegations is any factual basis for the assertion that a franchise existed, such as a description of what trade name, service mark,

12

trademark, logotype or related characteristic was covered by the purported franchise and what Timas and Ward were licensed to do or use.  Counts 1, 2, and 3 are dismissed without prejudice given the failure to plead sufficient facts.[2]

### 2.  Count 4.

Count 4 asserts breach of contract.  It alleges that TGR materially breached "the Agreement" by failing to advance Timas and Ward enough funds, provide adequate training for the junior IAs, pay Timas and Ward their commissions, maintain proper records and accurately weigh the gold, and maintain an accurate gold party calendar.  Timas and Ward Counterclaim ¶ 43.  TGR also allegedly violated the Agreement by harassing and berating Timas and Ward and their junior IAs.  Id.

As the court stated with respect to Counts 1, 2, and 3, Timas and Ward do not provide sufficient factual information about the Agreement to sustain a claim based on it.  Nor do they

---

[2]   TGR argues as an alternative ground for dismissal of Counts 1, 2, and 3 the lack of allegation by Timas and Ward that they paid a franchise fee.  TGR contends that the reference by Timas and Ward to a monthly fee to access "back room information" cannot be read as going to any franchise fee.  A franchise fee is "any fee or charge that a franchisee . . . is required to pay or agrees to pay for the right . . . to continue a business under a franchise agreement."  Haw. Rev. Stat. § 482E-2.  TGR notes that a fee for information is not included in the nonexclusive statutory list of fees that qualify as franchise fees.  This argument by TGR may be better suited to a summary judgment motion than to a motion to dismiss.  In any event, as the court dismisses Counts 1, 2, and 3 or other grounds, it need not address this alternate ground.

even suggest what provisions TGR allegedly violated.  This court is not saying that, to state a breach of contract claim, Timas and Ward must quote the breached contractual provision, refer to a contract page or paragraph, or follow some other rigid format. But they do need to provide some indication of what TGR was obligated to do with respect to advancing funds, training junior IAs, paying commissions, records, weighing gold, and maintaining a party calendar, if they are alleging deficiencies in those areas.  Otherwise, TGR cannot determine, for example, if the alleged breach concerning payment of commission goes to timeliness or amount.  Count 4 cannot be said to give TGR adequate notice as to the basis for a breach of contract claim. As Count 4 does not plead sufficient facts, it is dismissed without prejudice.

### 3.   Count 5.

Count 5 asserts tortious breach of contract.  It alleges that TGR's breach of contract (alleged in Count 4) was tortious "because TGR acted willfully and in reckless disregard of its obligations as a Franchisor, both under the terms of the Agreement and Hawai`i law."  Timas and Ward Counterclaim ¶¶ 48, 50.

In Francis v. Lee Enterprises, Inc., 89 Haw. 234, 244, 971 P.2d 707, 708 (Haw. 1999), the Hawaii Supreme Court greatly restricted claims for tortious breach of contract:

14

> Hawai'i law will not allow a recovery in tort, including a recovery of punitive damages, in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract.

Timas and Ward do not allege in Count 5 that TGR committed an independent tort beyond the alleged breach of contract.

Timas and Ward argue that their allegation that TGR falsely accused them of stealing money, see Timas and Ward Counterclaim ¶ 18, goes to a tortious breach of contract. While tort law may indeed impose an independent duty on TGR to refrain from falsely accuse people of stealing, Count 5 does not allege a cognizable breach over and above Count 4, the breach of contract claim. The court's reading of Count 5 is that it is based on TGR's breach of contract, which Timas and Ward claim was willful and in reckless disregard of its obligations to TGR under the contract. Count 5 does not refer to TGR's alleged false accusation. Rather, the false accusation allegation forms the basis of Timas and Ward's defamation claim (Count 6).

At the hearing on this motion, Timas and Ward indicated that they were not challenging the dismissal of Count 5. Given the limitations Hawaii law places on tortious breach of contract claims, further amendment of Count 5 would be futile. Count 5 is dismissed with prejudice.

4.   Count 7.

Count 7 asserts a claim for negligent representation. It alleges that TGR negligently made material misstatements of fact that Timas and Ward relied on to their detriment.  TGR argues that Count 7 actually alleges fraud and is therefore subject to the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure.

TGR is unpersuasive on this point.  Although a negligent misrepresentation claim in some jurisdictions may be subject to Rule 9(b), a negligent misrepresentation claim under Hawaii law is not.  Compare Neilson v. Union Bank of California, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) (analyzing negligent misrepresentation under California law and stating that it is "well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements"), with Smallwood v. NCsoft Corp., 730 F. Supp. 2d 1213, 1231-32 (D. Haw. 2010) (holding that, because a negligent misrepresentation claim under Hawaii law does not require intent, it is not subject to Rule 9(b)) (citations omitted), and Peace Software, Inc. v. Hawaiian Elec. Co., Inc., Civ. No. 09-00408 SOM/LEK, 2009 WL 3923350, at *6-7 (D. Haw. Nov. 17, 2009) (declining to apply Rule 9(b)'s heightened pleading standard to negligent misrepresentation under Hawaii law because

the defendant did not establish that negligent misrepresentation requires intent).

Hawaii law provides that the elements of a negligent misrepresentation claim are: "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." Ass'n of Apartment Owners of Newton Meadows v. Venture 15, Inc., 115 Haw. 232, 256, 167 P.3d 225, 263 (Haw. 2007) (quoting Blair v. Ing, 95 Haw. 247, 269, 21 P.3d 452, 474 (Haw. 2001)). By contrast, the elements of fraud under Hawaii law are "1) false representations made by the defendant, 2) with knowledge of their falsity (or without knowledge of their truth or falsity), 3) in contemplation of plaintiff's reliance upon them, and 4) plaintiff's detrimental reliance." Fisher v. Grove Farm Co., Inc., 123 Haw. 82, 103, 230 P.3d 382, 403 (Haw. Ct. App. 2009).

Count 7's allegations correspond to the elements of negligent misrepresentation, not fraud. Timas and Ward allege that TGR "negligently" made false statements, that Timas and Ward relied on those statements, and that they have suffered monetary loss as a result. They do not allege a key element of fraud: that TGR knew its alleged statements were false. Count 7 thus need not meet the heightened pleading standard under Rule 9(b).

In its reply, TGR states that the allegations in
Count 7 do not even comply with Rule 8.  It is true that Count 7
recites the elements of a negligent misrepresentation claim
without providing facts that make such a claim plausible on its
face.  Count 7 does not identify the statements that were
allegedly made negligently.  It alleges that, had Timas and Ward
known the "true facts," they would not have become IAs with TGR,
but it does not state what those "true facts" were.  Count 7 does
not plead sufficient facts to state a negligent misrepresentation
claim.  The court would ordinarily not countenance an argument
raised for the first time in a reply.  However, as other claims
are being dismissed with leave to amend, efficiency is served by
addressing Count 7's failure to state a claim at this time.
Count 7 is therefore dismissed without prejudice.

          5.   Count 8.

          Count 8 asserts that TGR breached the implied covenant
of good faith and fair dealing, which it contends is incorporated
into the Agreement that TGR allegedly entered into with Timas and
Ward.  This claim in essence asserts the tort of "bad faith."
See Best Place v. Penn AM. Ins. Co., 82 Haw. 120, 128, 920 P.2d
334, 342 (Haw. 1996) (adopting tort of bad faith for breach of
implied covenant of good faith and fair dealing in an insurance
contract).

18

Hawaii law generally does not recognize tort claims for breach of good faith or fair dealing outside the insurance context. See id. at 132, 920 P.2d at 346 (stating, "[T]he policy considerations surrounding the adoption of the tort of bad faith in the insurance context are atypical and will not necessarily extend to all types of contracts. Thus, the availability of a tort recovery for breach of the implied covenant of good faith and fair dealing may be justified in actions brought on insurance contracts, but not necessarily in actions brought on other types of contract"); see also Francis, 89 Haw. at 238, 971 P.2d at 711 ("Other jurisdictions recognizing the tort of bad faith similarly limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion." (citations omitted)). The context of this case does not allow for a claim for bad faith. Count 8 is therefore dismissed. At the hearing on this motion, Timas and Ward appeared to concede that Count 8 did not state a cognizable claim. Because further amendment would be futile, Count 8 is dismissed with prejudice.

> 6.  Count 9.

Count 9 alleges that sections 3.6.1 and 3.6.4 in the Terms and Conditions constitute an "illegal restraint on trade" and are unenforceable noncompete provisions under the Hawaii Antitrust Law, chapter 480 of the Hawaii Revised Statutes.

19

Count 9, however, does not indicate what specific statute is violated by sections 3.6.1 and 3.6.4 of the Terms and Conditions.  It refers to chapter 480 of the Hawaii Revised Statutes as a whole, but chapter 480 encompasses numerous provisions.  The court and TGR are left to guess which statute forms the basis for Count 9.

In their opposition, Timas and Ward quote section 480-4(a) (improperly citing it as section 480-4(c)), which states, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce in the State, or in any section of this State is illegal."  Haw. Rev. Stat. § 480-4(a).  It is not enough for Timas and Ward to identify a specific provision in opposing a motion.  Rule 8(a) requires that the counterclaim itself state a claim for relief.  Fed. R. Civ. P. 8(a).  See also Caniadido v. Countrywide Bank, FSB, Civil No. 11-00080 SOM/BMK, 2011 WL 2470640, at *12-13 (D. Haw. June 20, 2011) (dismissing a "predatory lending" cause of action because, as the common law does not recognize a "predatory lending" claim, the ambiguous term potentially encompasses a wide variety of alleged wrongs and fails to provide notice to any defendant of what is being claimed).  Because Count 9 does not allow TGR to determine what law it is being accused of having violated, Count 9 does not plead a cognizable claim and is dismissed without prejudice.

TGR argues that Count 9 should be dismissed with prejudice because section 480-4(c) of the Hawaii Antitrust Act expressly permits sections 3.6.1 and 3.6.4.  Under section 480-4(c), certain restrictive covenants are lawful, including:

> A covenant or agreement by an employee or agent not to use the trade secrets of the employer or principal in competition with the employee's or agent's employer or principal, during the term of the agency or thereafter, or after the termination of employment, within such time as may be reasonably necessary for the protection of the employer or principal, without imposing undue hardship on the employee or agent.

According to TGR, sections 3.6.1 and 3.6.4 are permissible covenants not to use trade secrets.  Section 3.6.1 prohibits IAs from recruiting other IAs for other multi-level or network marketing companies while they are TGR IAs and for six months after.  Section 3.6.4 restricts IAs from sharing TGR's "back room information" and using that information to compete with TGR, among other things.

The court declines to dismiss Count 9 with prejudice.  Whether the identity of TGR's IAs or the content of its "back room information" is a "trade secret" is unclear.  In addition, section 480-4(c) requires that restrictive covenants serve "a legitimate purpose not violative of [chapter 480]."  Sections 3.6.1 and 3.6.4 of the Terms and Conditions do not expressly state a purpose, and Timas and Ward allege that TGR had no legitimate purpose.  Timas and Ward Counterclaim ¶ 65(e).  At

21

this stage, the court cannot say that amendment of Count 9 would be futile.  Count 9 is dismissed without prejudice.

       7.   <u>Count 10.</u>

Count 10 asserts "punitive damages."  Recognizing that a punitive damages claim is not based on an independent tort, but rather is incident to a separate cause of action, Timas and Ward have withdrawn Count 10.  They may continue to pray for punitive damages as incidental to their defamation action.  <u>See, e.g.</u>, <u>Machado v. Int'l Ass'n of Heat and Frost Insulators & Asbestos Workers (AFL-CIO)</u>, 454 F. Supp. 2d 1056, 1065 (D. Haw. 2006) ("[A]s a matter of law, the Court finds that Plaintiff may recover punitive damages if he succeeds on his defamation claim.").

In sum, Counts 1, 2, 3, 4, 7, and 9 in Timas and Ward's counterclaim are dismissed without prejudice.  Counts 5 and 8 in Timas and Ward's Counterclaim are dismissed with prejudice.

     B.   <u>Aloha Island Counterclaim.</u>

       1.   <u>Count I.</u>

Count I asserts a claim for "tortious interference with contractual relations."  It alleges that TGR caused its former IAs to terminate their contracts with Aloha Island by threatening them with legal action.

Under Hawaii law, the elements of tortious interference with contractual relations are: "(1) a contract between the

plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional inducement of the third party to breach the contract; (4) the absence of justification on the defendant's part; (5) the subsequent breach of the contract by the third party; and (6) damages to the plaintiff." Lee v. Aiu, 85 Haw. 19, 32, 936 P.2d 655, 668 (Haw. 1997) (citing Weinberg v. Mauch, 78 Haw. 40, 50, 890 P.2d 277, 287 (Haw. 1995)). Aloha Island's counterclaim alleges that TGR's cease and desist letters induced the former IAs to terminate their agreements with Aloha Island. See id. ¶¶ 12-13 (alleging that the former IAs terminated their agreements "[a]s a direct result of" the cease and desist letters).

To succeed on a tortious interference with contractual relations claim, a plaintiff must show "that the third party acted with intent and legal malice, i.e., the intentional doing of a harmful act without legal or social justification or excuse, or, in other words, the wilful violation of a known right." Meridian Mortg., Inc. v. First Hawaiian Bank, 109 Haw. 35, 45-46, 122 P.3d 1133, 1143-44 (Haw. Ct. App. 2005) (internal citations and italics omitted).

Aloha Island fails to allege specific facts that, if true, would establish that TGR lacked legal justification for threatening its former IAs with legal action. Count I states, "TGR lacked any lawful justification to threaten or prosecute

23

legal action against the Former IAs and TGR's sole purpose was to induce the Former IAs to terminate their independent contractor agreements and business relations with [Aloha Island]."  Aloha Island Counterclaim ¶ 20.  These are in the nature of conclusions.  They are unaccompanied by any indication of the ground on which Aloha Island makes its assertion or how Aloha Island can show this.  The allegation that TGR lacked legal justification is merely a recitation of the fourth element of a tortious interference with contractual relations claim.

Without factual allegations, Aloha Island does not state a claim.  See GRK Holdings, LLC v. First American Ins. Co., 2010 WL 3940575, *9 (D. Ariz. Oct. 6, 2010) ("[T]he mere allegation that interference was improper is a legal conclusion, not a statement of fact.").

In Simon Property Group, Inc. v. Palombaro, 682 F. Supp. 2d 508, 512 (W.D. Pa. 2010), the United States District Court for the Western District of Pennsylvania determined that a counterclaimant had insufficiently pled that a counterclaim defendant's interference was without legal justification when the counterclaimant pled only that the counterclaim defendant's actions were not protected by a judicial or financial interest privilege.  The counterclaimant based its claim in part on the counterclaim defendant's initiation and publication of a lawsuit.  Id.  The court held that the

24

counterclaimant's allegation that there was no privilege was a "blanket, conclusory statement," and that the pleadings failed to show how the counterclaim defendant's actions were not privileged. Id. (citing Twombly, 550 U.S. at 555)). See also GRK Holdings, 2010 WL 3940575, at *9 (dismissing a tortious interference with contractual relations claim on the ground that the plaintiff had not properly alleged that the defendant lacked legal justification for the lawsuit, as the allegation that the lawsuit was filed with improper motive was not accompanied by supporting factual allegations).

If TGR threatened or pursued legal action believing that it was asserting its legal rights under agreements with its former IAs, that would not be tortious. Aloha Island is unconvincing in arguing in its opposition that its claim is consistent with a comment in the Restatement (Second) of Torts, quoted in Bowhead Information Technology Services, LLC v. Catapult Technology Ltd., 377 F. Supp. 2d 166, 175-77 (D.D.C. 2005). That comment says that threats of litigation are wrong only "if the actor has no belief in the merit of the litigation." Restatement (Second) of Torts § 767 cmt c. (1979). It does not say that merely threatening a civil suit, without more, is actionable. In the present case, there are no factual allegations suggesting that TGR lacked belief in the merit of the allegedly threatened legal action. Without an explanation as to

25

how TGR's threats of legal action were unwarranted, this court cannot say that Aloha Island states a claim for relief that is plausible on its face.

Aloha Island also cites this court's decision in <u>Peace Software, Inc. v. Hawaiian Electric Company, Inc.</u>, Civ. No. 09-00408 SOM/LEK, 2010 WL 290649 (D. Haw. Jan. 22, 2010), in support of its position that its claim is sufficiently plead.  <u>Peace Software</u> is distinguishable.  That case concerned the scope of software and services that the plaintiff, Peace Software, was required to provide to the defendant, Hawaiian Electric Company ("HECO"), by contract.  <u>Id.</u> at *1.  HECO asserted a counterclaim against Peace Software's former parent company, First Data, claiming that First Data intentionally interfered with Peace Software's contract with HECO, causing Peace Software to be unable to perform its contractual obligations.  <u>Id.</u>  The court was able to infer that First Data's alleged tortious interference was for an improper purpose because, among other things, First Data would not benefit economically by interfering with the contract.  <u>Id.</u> at *7.  In this case, the court cannot similarly say that TGR lacked any financial reason to send its former IAs cease and desist letters.  The former IAs' purported violations of their agreements with TGR may have been causing TGR an economic detriment.

26

The court thus dismisses Count I for failing to state a claim that, in the absence of factual allegations, is plausible on its face.

> 2.   Count II.

Count II asserts tortious interference with prospective business advantage.  Like Count I, Count II alleges that the threat and prosecution of legal action constitute the tortious interference.  The elements of tortious interference with prospective business advantage are:

> (1) the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff; (2) knowledge of the relationship, advantage, or expectancy by the defendant; (3) a purposeful intent to interfere with the relationship, advantage, or expectancy; (4) legal causation between the act of interference and the impairment of the relationship, advantage, or expectancy; and (5) actual damages.

Meridian Mortg., Inc., 103 Haw. at 47-48, 122 P.3d at 1145-46.

TGR first argues that Aloha Island does not plead sufficient facts to establish the third element.  "The third element--intent--denotes purposeful[] improper interference, and requires a state of mind or motive more culpable than mere intent.  In other words, the plaintiff must prove that the defendant either pursued an improper objective of harming the plaintiff or used wrongful means that caused injury in fact.

Asserting one's rights to maximize economic interests does not create an in[]ference of ill will or improper purpose." Hawaii Medical Ass'n v. Hawaii Med. Serv. Ass'n, Inc., 113 Haw. 77, 117, 148 P.3d 1179, 1218 (Haw. 2006) (quoting Omega Envtl., Inc., v. Gilbarco, Inc., 127 F.3d 1157, 1166 (9th Cir. 1997), and Locricchio v. Legal Services Corp., 833 F.2d 1352, 1358 (9th Cir. 1987)) (quotation marks omitted).

Aloha Island alleges with respect to intent that "TGR, through its unlawful threats and prosecution of legal action, did purposefully interfere with business relations between [Aloha Island] and the Former IAs and their expectancy of future economic benefit to be derived from such relationship." Aloha Island Counterclaim ¶ 26. However, Aloha Island's allegation that TGR's threats and prosecution of litigation were unlawful is conclusory and provides no explanation of what made the threats or lawsuit improper. The court thus agrees with TGR that this claim is not properly pled.

TGR argues in the alternative that Count II does not plead the first element: "the existence of a valid business relationship or a prospective advantage or expectancy sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to the plaintiff." It argues that Aloha Island alleges only facts that show it already had legal

agreements with the former IAs, not that it had *prospective* agreements.  The court disagrees with TGR on this point.

The Hawaii Supreme Court has stated that, although the "prospective economic relationship need not take the form of an offer[,] there must be specific facts proving the possibility of future association." <u>Hawaii Medical Ass'n</u>, 113 Haw. at 116, 148 P.3d at 1218 (citations omitted).  Count II alleges that "[Aloha Island] and the Former IAs intended to continue with [their independent contractor agreements] and business relations with the definite expectation of future economic benefit to both parties."  Aloha Island Counterclaim ¶ 24.  Aloha Island says that the term "business relations" refers to Aloha Island's relationship with some of TGR's former IAs that it expected would lead to independent contractor agreements.  Aloha Island's Counterclaim also alleges that the former IAs "agreed to enter into independent contractor agreements with Aloha Island." <u>Id.</u> ¶ 11.  Read in the light most favorable to Aloha Island, these factual allegations satisfy Aloha Island's obligation to plead sufficient factual support for the first element.

V.      <u>CONCLUSION.</u>

With respect to Timas and Ward's counterclaim, the court dismisses Counts 1, 2, 3, 4, 5, 7, 8, and 9.  Counts 1, 2, 3, 4, 7, and 9 are dismissed without prejudice, while Counts 5 and 8 are dismissed with prejudice.  With respect to Aloha

Island's counterclaim, the court dismisses Count I and Count II without prejudice.  Timas and Ward, as well as Aloha Island, are granted leave to amend their counterclaims.  Timas and Ward may amend only the counts that are dismissed without prejudice.  No later than March 15, 2012, the parties may file amended counterclaims that attempt to cure the identified deficiencies.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 15, 2012.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

The Gold Refinery, LLC v. Aloha Island Gold, LLC, et al.; Civil No. 11-00522 SOM-RLP;
ORDER (1) GRANTING PLAINTIFF'S MOTION TO PARTIALLY DISMISS DEFENDANTS SAM TIMAS AND
SANDY WARD'S COUNTERCLAIM TO PLAINTIFF'S COMPLAINT, and (2) GRANTING PLAINTIFF'S
MOTION TO DISMISS DEFENDANT ALOHA ISLAND GOLD, LLC'S COUNTERCLAIM